J-S21017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.V.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 399 MDA 2026 |

Appeal from the Order Entered February 4, 2026
In the Court of Common Pleas of Adams County Orphans' Court at No(s):
RT-14-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: R.E.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 400 MDA 2026 |

Appeal from the Order Entered February 4, 2026
In the Court of Common Pleas of Adams County Orphans' Court at No(s):
RT-13-2025

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                **FILED: JULY 31, 2026**

J.M.E. ("Father") appeals from the February 4, 2026 orders granting the petitions of E.D.M. ("Mother") and S.L.M. ("Stepfather") (collectively, "Appellees") and involuntarily terminating his parental rights to his son, M.V.E., born in March 2016, and daughter, R.E.E., born in June 2017 (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A.

§ 2511(a)(1) and (b).  Following our review, we are constrained to vacate and remand with instructions.

Given our disposition, we need not detail the full factual and procedural history of this case.  By way of background, the Children were born to Mother and Father during their marriage, when they resided as a family in Maryland. **See** N.T., 1/16/26, at 6, 39, 41-42.  Mother and Father separated in September 2022, following Father's arrest for driving under the influence and entry into a rehabilitation program.  **See id.** at 38, 64-65.  Ultimately, they divorced in November 2024.  **See id.** at 20.  Father has not seen or spoken to the Children since September 2022.[1]  **See id.** at 6-8, 18, 64.

At the time of their separation in September 2022, Mother sought and obtained a final protective order on behalf of herself and the Children against Father, wherein the Maryland court awarded Mother custody of the Children and prohibited all contact from Father.  **See** Exhibit P-3 (Final Protective Order) at 1-2; **see also** N.T., 1/16/26, at 10-11, 43.  Upon expiration of the protective order one year later, the Maryland court awarded Mother sole physical and legal custody of the Children in October 2023.  **See** Exhibit P-2 (Final Order for Custody and Child Support); **see also** N.T., 1/16/26, at 11,

---

[1] We observe that Father testified to several unanswered text messages and calls to Mother in 2024 in order to speak with the Children.  **See** N.T., 1/16/26, at 45, 54.  He further asserted that he sent the Children several cards in 2025. **See id.** at 49-50, 56.  While these claims were disputed by Mother, she did acknowledge that Father requested a video call to "watch" the Children in April 2024.  **Id.** at 6-8, 21, 25-26.  As best we can discern, this call did not occur.

62-63.  The court only granted Father access to the Children as permitted by Mother.  ***See*** Exhibit P-2 (Final Order for Custody and Child Support); ***see also*** N.T., 1/16/26, at 20.  Since the entry of this order, Father has not sought to modify his custody award.  ***See*** N.T., 1/16/26, at 16, 40-41, 56-57, 63.  Additionally, Father has failed to financially support the Children.  At the time of the subject hearing, Father had accrued child support arrears of more than $22,000.  ***See id.*** at 12.  Further, Mother denied receipt of any other financial support from him.  ***See id.*** at 15-16.

Mother began a romantic relationship with Stepfather at a time unspecified in the record and moved with the Children to Stepfather's residence in Pennsylvania in December 2023.  ***See id.*** at 18, 20.  Thereafter, she and Stepfather, eventually, married in October 2025.  ***See id.*** at 5, 30.  On August 4, 2025, Appellees filed petitions to involuntarily terminate Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1) and

(b).[2, 3]  At that time, Father had been incarcerated in federal prison since December 2024.  *See*, N.T., 1/16/26, at 36, 49.  He remained incarcerated at the time of the subject hearing.[4]  *See id.* at 35-36.

_____

[2]  Appellees were not married at the time they filed the subject petitions seeking to involuntary terminate Father's parental rights.  Our Supreme Court has explained that "a termination petition filed by one parent against the other must occur in the context of an anticipated adoption[.]"  *In re Adoption of M.R.D.*, 145 A.3d 1117, 1120 (Pa. 2016).  To that end, the Adoption Act requires a parent seeking termination in this context "to consent to the adoption and to relinquish his or her parental rights."  *Id.* (citing 23 Pa.C.S.A. § 2711(a)(3), (d)(1)).  "An exception to this relinquishment requirement exists, however, in second-parent adoption cases where the adopting party is the spouse of the parent seeking termination—that is, in the context of a stepparent adoption."  *Id.* at 1120-21.  Critically, however, Appellees were married prior to the termination hearing in this case.  Thus, "[w]hen the court granted termination, the adoption of [the Children] by Stepfather was foreseeable."  *Interest of A.N.A.*, 334 A.3d 413, at *3 (Pa. Super. 2025) (unpublished memorandum).  Accordingly, we decline to hold that Appellees' unmarried status at the time of filing of the termination petitions impacts the validity of the underlying orders.  *See id.*

[3] We also note that Stepfather failed to file a report of his intention to adopt the Children at the time of the filing of the petition, as required pursuant to 23 Pa.C.S.A. §§ 2512(a)(3) and 2531(a)-(b).  This Court has made clear, however, that compliance with the requirement of filing a report of intention to adopt relates to a party's standing to seek termination, as opposed to subject matter jurisdiction.  *See In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1288-89 (Pa. Super. 2011).  Here, Father failed to raise any objection to Stepfather's standing based upon his failure to file a report of his intention to adopt the Children at the time of the filing of the termination petitions.  Thus, any arguable deficiencies in Stepfather's standing are waived.  *See id.* at 1289-90 (citing Pa.R.A.P. 302(a)).  Moreover, we also re-emphasize that by the time of the subject hearing Mother and Stepfather were, in fact, married.  *See* 23 Pa.C.S.A. § 2531(c) ("No report shall be required when the child is the child, grandchild, stepchild, brother or sister of the whole or half blood, or niece or nephew by blood, marriage or adoption of the person receiving or retaining custody or physical care.").

*(Footnote Continued Next Page)*

On November 5, 2025, the orphans' court appointed Andrea Singley, Esquire ("Attorney Singley") to serve as guardian *ad litem* ("GAL") for the Children, then ages eight and nine years old.[5]  **See** Order, 11/5/25.  The record is silent, however, regarding the appointment of legal counsel for the Children pursuant to 23 Pa.C.S.A. § 2313(a).  Moreover, as discussed *infra*, the certified record does not reflect that the orphans' court considered or determined whether Attorney Singley could represent both the Children's best and legal interests without conflict.

On January 16, 2026, the orphans' court conducted a hearing on Appellees' petitions.  Appellees were present and represented by counsel.  Father participated virtually from prison and was represented by counsel.  Appellees each testified on their own behalf.  Additionally, Father testified and presented the testimony of the Children's paternal grandfather.  During this proceeding, as throughout the entire termination case, the Children were represented solely by Attorney Singley.

---

[4] Father pleaded guilty to a federal charge of conspiracy to commit bribery and was sentenced to a period of 53 months' incarceration.  **See** N.T., 1/16/26, at 36.  He testified that he hoped to be released on house arrest as early as March 2026.  **See id.**

[5] While this order, present in the certified record for R.E.E., is missing from the certified record for M.V.E., we discern from the docket that an appointment order was also issued with respect to M.V.E.

By orders dated and entered February 2, 2026, the orphans' court terminated Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On February 27, 2026, Father filed timely, separate notices of appeal. On March 2, 2026, the orphans' court directed Father to immediately file concise statements pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On March 5, 2026, Father complied.[6] This Court consolidated the appeals *sua sponte*. Thereafter, the orphans' court filed responsive Rule 1925(a) opinions.

On appeal, Father raises the following issues for our review:

1. Was an error committed when a [GAL] was appointed and not an attorney for the [C]hildren?

2. Did the trial court abuse its discretion or commit an[] error of law in holding that [Father] by conduct continuing for a period of at least six months immediately preceding the filing of petition either has evidenced a settled purpose of relinquishing parent claim to a child or has refused or failed to perform parental duties?

_____

[6] Father failed to strictly comply with the requirement that a concise statement be filed contemporaneously with a notice of appeal in children's fast track matters. **See** Pa.R.A.P. 905(a)(2), 1925(a)(2)(i). An oversight of this nature does not divest this Court of jurisdiction, but results in a "defective notice of appeal" that must be addressed on a "case-by-case" basis. **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009). "'The extreme action of dismissal should be imposed by an appellate court sparingly[] and clearly would not be appropriate when there has been substantial compliance with the rules'" and no party has "'suffered prejudice.'" **Id.** (quoting **Stout v. Universal Underwriters Ins. Co.**, 421 A.2d 1047, 1049 (Pa. 1980)). This Court has declined to quash appeals where an appellant failed to comply with these directives but subsequently complied with an order of court directing the litigant to file a concise statement. **See Z.S.H.G.**, 34 A.3d at 1286 (citing **K.T.E.L.**, 983 A.2d at 747-48). Thus, we will not quash this appeal, and we will address the merits of Father's arguments. **See id.**

3. Did the court abuse its discretion or commit [an error of law] by finding that the [C]hildren's best interest would be served by termination?

Father's Brief at 1-2 (suggested answers omitted).[7]

In his first issue, Father asserts that the orphans' court erred in appointing only a GAL, and not legal counsel, for the Children as required pursuant to 23 Pa.C.S.A. § 2313(a). **See** Father's Brief at 3-4. We are constrained to agree.

Section 2313 of the Adoption Act provides, in relevant part, as follows:

**(a) Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is

_____

[7] We note with disapproval that Father fails to comply with Rule 2119(a) by not dividing the argument section of his brief into properly titled sections directly corresponding to the issues raised in his statement of questions involved. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein[.]"). We further acknowledge that Father did not file a designation of contents of reproduced record or a reproduced record. **Cf.** Pa.R.A.P. 2152-53, 2154(c). While Appellees have noted Father's lack of compliance with respect to the reproduced record, they have not explicitly sought dismissal of the matter pursuant to Pa.R.A.P. 2188 ("Consequence of Failure to File Brief and Reproduced Record"). **See** Appellees' Brief at 6 n.1 ("Appellee[s] note [that they have] not specifically filed an [a]pplication to [d]ismiss under [Rule] 2188[.]"). We are able to discern the issues raised and related arguments, and we perceive no prejudice to the parties. Thus, "[w]hile we in no way wish to condone [this] non-compliance, we conclude that, for purposes of this case, the defects in the brief and reproduced record are not of such a magnitude as would preclude effective exercise of our appellate review." **Thomas v. APSCUF**, 485 A.2d 903, 905 (Pa. Cmwlth. 1985) (citing Pa.R.A.P. 2101); **see also Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) ("This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate."). Thus, we need not quash Father's appeal.

- 7 -

being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

This Court has articulated the relevant law as follows:

Our Supreme Court has explained that "Section 2313(a) requires the appointment of counsel who serves the child's legal interests in contested, involuntary [termination of parental rights] proceedings." ***In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017) (footnote omitted). Further, the ***L.B.M.*** Court held that "**the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.**" ***Id.*** at 183. **Further, the failure to appoint counsel to represent a child's legal interests pursuant to Section 2313(a) is a non-waivable error. *See In re T.S.***, 192 A.3d 1080, 1087 (Pa. 2018).

***Interest of H.H.N.***, 296 A.3d 1258, 1263-64 (Pa. Super. 2023) (cleaned up; emphasis added).

Concomitantly, Section 2313(a) and our case law contemplates that an orphans' court may also appoint a GAL to represent a child's best interests in a termination of parental rights matter. ***See*** 23 Pa.C.S.A. § 2313(a). In this context, "a child's legal interests . . . are synonymous with the child's preferred outcome," whereas a child's best interests encompass what is "best for child's care, protection, safety, and wholesome physical and mental development, regardless of whether the child agrees." ***Matter of Adoption of A.C.M.***, 333 A.3d 704, 708 (Pa. Super. 2025) (citations omitted). It is not unusual for

orphans' courts to appoint a single attorney to act as both legal counsel and GAL for a child in these cases. **See K.M.G.**, 240 A.3d at 1228. Notwithstanding, "when a child's legal interests conflict with the child's best interests, those interests must be represented **by separate individuals** during the termination proceeding to ensure that the child's legal interests are presented to the orphans' court." **Id.** at 1234 (emphasis added). When an orphans' court intends to appoint an individual to dually serve as both legal interest counsel and a GAL in a termination case, it

> "must determine whether counsel can represent the dual interests **before** appointing an individual to serve as GAL/[legal c]ounsel for a child. Given the essential nature of the GAL/[legal c]ounsel's ability to represent a child without conflict and **this Court's mandate that the orphans' court make that determination prior to appointment** we conclude that appellate courts should verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict."

**A.C.M.**, 333 A.3d at 708 (emphasis in original) (quoting **K.M.G.**, 240 A.3d at 1236); **see also Interest of R.D.**, ___ A.3d ___, 2026 WL 1757004, at *4 (Pa. Super. 2026) (same).

Instantly, the orphans' court never formally appointed counsel to represent the Children's legal interests. Rather, Attorney Singley was appointed solely as GAL and acted as the Children's only attorney during the contested involuntary termination proceedings. In its Rule 1925(a) opinion, for the first time, the orphans' court explained that it intended for Attorney Singley to dually represent the Children's best and legal interests in these

proceedings. *See* Orphans' Court Opinion, 3/26/26, at 2-3 ("[W]here there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.") (citing *T.S.*, 193 A.3d at 1088).

Critically, however, the orphans' court did not make a determination that Attorney Singley could represent both the Children's best and legal interests without conflict prior to her appointment. *Cf. K.M.G.*, 240 A.3d at 1236; *R.D.*, 2026 WL 1757004, at *4; *A.C.M.*, 333 A.3d at 708. This Court has also previously rejected attempts by an orphans' court to rely upon a belated conflict determination in a Rule 1925(a) opinion.[8] *See In re Adoption of K.L.B.*, 324 A.3d 1225, 2024 WL 3385486, *3 (Pa. Super. 2024) (unpublished memorandum) (remanding where the trial court, for the first time, noted in its Rule 1925(a) opinion the dual nature of counsel's representation and provided an after-the-fact determination that the children's best interests and legal interests did not conflict).[9]

---

[8] *But see Interest of M.L.H.*, 334 A.3d 384, at *3 (Pa. Super. 2025) (unpublished memorandum) (accepting a conflict determination pursuant to Section 2313(a) rendered for the first time in a Rule 1925(a) opinion); *see also Interest of L.G.K.*, 343 A.3d 217, at *2 n.2 (Pa. Super. 2025) (unpublished memorandum) (accepting a conflict determination that was not rendered prior to the appointment of counsel).

[9] Non-precedential decisions filed after May 1, 2019 "may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

Accordingly, we are constrained to conclude that the trial court erred by failing to place a determination on the record stating that there was no conflict between the Children's best interests and legal interests such that Attorney Singley could serve in a dual capacity. *See **K.M.G.**,* 240 A.3d at 1234-1236; ***R.D.**,* 2026 WL 1757004, at \*5; ***A.C.M.**,* 333 A.3d at 708. We, therefore, vacate the termination orders below and remand for further proceedings consistent with the following directives. *See **id.***

We direct the Prothonotary of this Court to immediately remit the record to the orphans' court. Upon remittal of the record, the orphans' court shall fulfill its Section 2313(a) duty within thirty days, as articulated in ***K.M.G.*** and its progeny by determining, after a hearing, whether Attorney Singley may represent both the best interests and legal interests of the Children without conflict. *See **K.M.G.**,* 240 A.3d at 1234-1236; ***R.D.**,* 2026 WL 1757004, at \*6; ***A.C.M.**,* 333 A.3d at 709. If the orphans' court determines that no conflict exists, then it shall re-enter its orders terminating Father's parental rights, which will constitute final, appealable orders. *See **A.C.M.**,* 333 A.3d at 709. If the orphans' court determines that there is a conflict between the Children's best interests and legal interests, then the orphans' court shall appoint separate legal counsel for the Children and conduct a new termination hearing

at which time Children's legal counsel can advocate on behalf of the Children's legal interests.[10]  *See K.M.G.*, 240 A.3d at 1235.

Orders vacated.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/31/2026

---

[10] Because we resolve this appeal based upon the Children's right to legal counsel, we need not reach the merits of Father's remaining claims.